IN the MATTER OF the ESTATE OF Ronald E. JUNG,
Deceased: (L.C. #97–PR–223)

Teresa REICHEL, Timothy A. Jung, Thomas L. Jung,
Tamara Hall and Todd Jung, Plaintiffs-Appellants,

v.

Dianne JUNG, Defendant-Respondent.

Court of Appeals

No. 99–1211. *Submitted on briefs February 10,
2000.—Decided June 14, 2000.*

2000 WI App 151

(Also reported in 616 N.W.2d 118.)

854

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Francis W. Deisinger* and *Bryan K. Nowicki* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert I. DuMez* of *O' Connor & Willems, S.C.* of Kenosha.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1.  SNYDER, J. The children of Ronald E. Jung (Jung children) appeal from an order of the circuit court dismissing their claim seeking the proceeds of an annuity (the Annuity) owned by Ronald prior to his death. The Jung children argue that the Annuity transferred to Ronald's estate pursuant to Ronald and his wife Dianne's "Marital Property Classification Agreement."[1] Dianne counters that the terms of the Annuity should dispose of the policy because it expressly directed ownership to pass to her as "co-annuitant."

¶ 2.  We agree with Dianne that the terms of the Annuity control this dispute. In reaching this conclusion, we follow Wisconsin law concerning nonprobate transfers at death and joint accounts with the right of survivorship. Under WIS. STAT. § 705.20 (1995–96),[2] the Annuity passed to Dianne as a nonprobate transfer of property, thereby defeating the marital agreement's classification of the Annuity as individual property and

---

[1] The Jung children are from Ronald's first marriage; Dianne was his second wife.

[2] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

855

the will's bequest of individual property to the Jung children. In addition, under WIS. STAT. § 705.04, the Annuity constituted a joint account which transferred to Dianne as Ronald's survivor. We therefore conclude that the trial court's decision should be affirmed.

## BACKGROUND

¶ 3. The pertinent facts have been stipulated. On April 14, 1997, Ronald and Dianne entered into a marital agreement for purposes of identifying and classifying the couple's individual and marital property. The agreement provided:

1. Purposes. The purposes of this Agreement are to classify and reclassify all properties, both real and personal, (including joint tenancy properties and properties held as tenants-in-common) now owned and/or hereafter acquired by either or both parties, as INDIVIDUAL PROPERTY or MARITAL PROPERTIES, as the case may be, pursuant to Sections 766.31(10) and 766.58 of the Wisconsin Statutes in order to avoid any confusion and uncertainty as to each party's ownership interests. This Agreement shall be construed in accordance with Chapter 766 of the Wisconsin Statutes.

. . . .

3. Property Classified as Dianne's Individual Property. Both parties agree that the property described on Exhibit A attached hereto and incorporated herein by reference as though set forth in its entirety, together with all income and appreciation attributable to that property, shall be classified and reclassified as Dianne's INDIVIDUAL PROPERTY. In addition, all property acquired in exchange for any such INDIVIDUAL PROPERTY and/or acquired from the proceeds of the sale of such INDI-

VIDUAL PROPERTY, shall also be classified and reclassified as Dianne's INDIVIDUAL PROPERTY.

4. <u>Property Classified as Ron's Individual Property</u>. Both parties agree that the property described on Exhibit B attached hereto and incorporated herein by reference as though set forth in its entirety, together with all income and appreciation attributable to that property, shall be classified and reclassified as Ron's INDIVIDUAL PROPERTY. In addition, all property acquired in exchange for any such INDIVIDUAL PROPERTY and/or acquired from the proceeds of the sale of such INDIVIDUAL PROPERTY, shall also be classified and reclassified as Ron's INDIVIDUAL PROPERTY.

5. <u>Classification of All Other Property</u>. The parties herewith classify and reclassify all other properties of the parties, together with all income and appreciation, with the exception of those properties classified as the INDIVIDUAL PROPERTY of a party in accordance with the above paragraphs 3 and 4, as MARITAL PROPERTIES of the parties.

¶ 4. Ronald and Dianne also agreed to waive any claim they may have to the other's individual property:

6. <u>Property Rights of the Survivor</u>. Each of the parties hereby waives, bars and absolutely relinquishes any and all rights which he or she may have under the law (regardless of the jurisdiction) with respect to the INDIVIDUAL PROPERTY of the other party upon the death of the other party. Without limiting the generality of the foregoing, this waiver shall include any and all elective rights under Chapter 861 of the Wisconsin Statutes or any other similar statute in any other jurisdiction where the parties may reside, it being the intention of the parties to absolutely bar any right of either party in the INDIVIDUAL PROPERTY of the other

party. This paragraph is intended to apply to all rights and property interests acquired as a result of the parties' marriage, including but not limited to rights of intestate succession, dower and curtesy, rights to elect against the will, election of deferred marital property, election of augmented marital property estate treatment, and election against the augmented estate; provided, however, that this paragraph shall not divest the surviving party of his or her one-half (1/2) interest in all MARITAL PROPERTY, acquired in accordance with paragraph 5 of this Agreement.

Each party shall join in the execution and filing of any instrument or conveyance and take any other action necessary to relinquish or otherwise avoid the effects of the laws of any jurisdiction conferring any right or interest relinquished above, if the other party's legal representative or successor in interest so requests.

However, nothing in this Agreement shall restrict the right of either party to voluntarily provide for the other party in accordance with his or her overall estate plan.

¶ 5. The agreement further allowed for transfer of record title upon request consistent with Ronald and Dianne's property classification:

7. Change of Record Title. In the event record title to property classified as a party's INDIVIDUAL PROPERTY is titled in the name of the other party or in both parties' names, each party agrees upon request to transfer record title to the party in whose name the asset has been classified as his or her INDIVIDUAL PROPERTY.

¶ 6. Exhibit B of the marital agreement enumerates items of property identified as Ronald's individual property. Included among these items is Prudential

Annuity No. 98–623–456 (the Annuity) with an estimated fair market value of $182,813.

¶ 7.   The Annuity lists Ronald as the first annuitant, Dianne as co-annuitant and the Jung children as primary beneficiaries.[3] Under a provision entitled "Ownership and Control," the Annuity reads:

> Unless we endorse this contract to say otherwise: (1) the owner of the contract is the Annuitant (the First Annuitant, if two are named); (2) while any annuitant is living the owner alone is entitled to (a) any contract benefit and value, and (b) the exercise of any right and privilege granted by the contract or by [Prudential]; and (3) *if two annuitants are named and the First Annuitant dies while the Co-Annuitant is living, the Co-Annuitant will become the Owner.* (Emphasis added.)

¶ 8.   On the same date of the marital agreement's execution, Ronald executed his will. The will provides in relevant part:

> SECOND.   I give, devise and bequeath all my household furniture and furnishings, jewelry, wearing apparel, automobiles and all other articles of household or personal use or ornament of which I may die possessed, to my wife, Dianne M. Jung, if living, or if she shall not be living, then equally to my children then-living in such properties as my personal representative in my personal representative's sole discretion shall determine.

---

[3] The application for Prudential Annuity No. 98–623–456 listed Ronald as the annuitant, Dianne as the co-annuitant and primary beneficiary, and the Jung children as contingent beneficiaries. Because Dianne could not be both the co-annuitant and primary beneficiary, the Annuity was amended to name Dianne as the co-annuitant and the Jung children as the primary beneficiaries.

THIRD.  I hereby ratify and confirm that my wife, Dianne M. Jung, owns all of the individual property classified by us pursuant to a Marital Property Classification Agreement, bearing even date. . . . To the extent at the time of my death we own any marital property, I hereby declare that my wife, Dianne M. Jung, owns a one-half (1/2) interest in all marital property and I intend that this Will dispose only of my interest in such marital property.

FOURTH.  I give, devise and bequeath the entire rest, residue and remainder of my estate equally to my children and to the then-living descendants, by right of representation, of any deceased child of mine. At the present time I have five (5) children whose names are as follows: Timothy A. Jung, Teresa J. Reichel, Thomas L. Jung, Tamara A. Hall and Todd M. Jung.

Thus, the will conveyed Ronald's interest in his personal effects to Dianne and bequeathed all other property, including his individual property, to the Jung children.

¶ 9.  On April 29, 1997, Ronald died. He was survived by Dianne and the Jung children. Following his death, the representative of Ronald's estate, Teresa Reichel, demanded that Dianne relinquish her ownership interest held in the Annuity.[4]

¶ 10.  On August 14, 1998, the Jung children brought this action against Dianne, requesting the court to transfer her interest in the Annuity to Ronald's estate.[5] The Jung children then sought a motion for

[4] Although Dianne was named personal representative of Ronald's estate, she later resigned and Teresa became the successor personal representative of the estate.

[5] The Jung children's lawsuit seeking transfer of Dianne's interest in the Annuity was later consolidated with the probate action involving Ronald's estate.

summary judgment seeking the proceeds of the Annuity. After the parties submitted briefs supporting their respective positions, the circuit court ruled in Dianne's favor. The court was persuaded by language contained in the Annuity indicating that if the first annuitant died, the co-annuitant would become owner. The Jung children appeal.

## DISCUSSION

¶ 11.  Motions for summary judgment are reviewed using the same methodology used by the trial court. *See M & I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct. App. 1995). We will not repeat this well-known methodology here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* at 496–97.

¶ 12.  The issue in this case is what document controls the disposition of the Annuity—the Annuity itself or Ronald and Dianne's marital agreement. The Jung children argue that the marital agreement is dispositive based on the breadth of its terms. They contend that by retaining ownership of the Annuity, Dianne has violated paragraphs six and seven of the agreement because: (1) she has failed to relinquish her rights in Ronald's individual property; (2) she never executed an instrument or conveyance with respect to Ronald's individual property; (3) she did not take any action to avoid the effects of relinquishing her right to Ronald's property; and (4) she did not transfer record title of Ronald's individual property to his estate. Because the Annuity is listed under Exhibit B of the marital agreement as Ronald's individual property, the

Jung children maintain that Dianne's claim of ownership is defeated.

¶ 13.  Dianne counters that the terms of the Annuity govern because they provide that upon the first annuitant's death, "the Co-Annuitant will become owner." Therefore, once Ronald died, Dianne became the owner. Dianne also points out that the marital agreement permits her retention of the Annuity because it states that "nothing in this Agreement shall restrict the right of either party to voluntarily provide for the other party in accordance with his or her overall estate plan."

¶ 14.  Standing alone, the Annuity no doubt prescribes transfer of ownership to Dianne as the co-annuitant upon the death of Ronald, the annuitant. The Annuity's language is clear in this regard and the Jung children do not dispute its terms nor do they seek reformation of the contract.

¶ 15.  On the other hand, the marital agreement affirmatively sets forth that Ronald's and Dianne's individual property shall belong to each of them separately and that each "absolutely relinquishes any and all rights which he or she may have under the law . . . with respect to the INDIVIDUAL PROPERTY of the other party upon the death of the other party." Included among Ronald's individual property is the Annuity. The marital agreement's language, however, is tempered by a further provision stating that the marital agreement shall not restrict either party from "voluntarily provid[ing] for the other party in accordance with his or her overall estate plan." The agreement does not further explain what an "overall estate plan" entails.

¶ 16.  The parties would have us determine which document controls by looking solely at the terms of

each. Such an exercise, however, reveals conflicting directions from each document. To resolve this conflict, we consider two Wisconsin Statutes which address the transfer of property upon the property owner's death.

¶ 17. The first statute is WIS. STAT. § 705.20, entitled "Nonprobate transfers on death." The statute reads:

> **(1)** A provision for a nonprobate transfer on death in an insurance policy, contract of employment, bond, mortgage, promissory note, certificated or uncertificated security, account agreement, custodial agreement, deposit agreement, compensation plan, pension plan, individual retirement plan, employe benefit plan, trust, conveyance, deed of gift, marital property agreement, or *other written instrument of a similar nature* is nontestamentary. This subsection governs a written provision that:
>
> . . . .
>
> (c) Any property controlled by or owned by the decedent before death which is the subject of the instrument passes to a person whom the decedent designates either in the instrument or in a separate writing, including a will executed either before or at the same time as the instrument, or later.

*Id.* (emphasis added).

■

¶ 18. Although an annuity is not enumerated within WIS. STAT. § 705.20(1), we nonetheless believe it falls under the language "other written instrument of a similar nature" because it has similar characteristics to the other items listed. While often issued by insurance companies, an annuity is more accurately classified as an investment, not an insurance policy. *See Prudential Ins. Co. v. Howell*, 148 A.2d 145, 148 (N.J. 1959). Like a pension plan, an annuity confers a

right to receive payments over a period of time. *See Grochowski v. Larson*, 196 Wis. 2d 231, 235, 538 N.W.2d 802 (Ct. App. 1995). Like many securities, an annuity contract is conceived by submitting an application and a single payment of the policy's principal. *See* 19 GEORGE J. COUCH, CYCLOPEDIA OF INSURANCE LAW § 81:2 (2d rev. ed. 1983). As is true with many investment tools, co-owners (or co-annuitants) and beneficiaries may be established. We conclude that an annuity qualifies as a "written instrument of a similar nature."

¶ 19. Under WIS. STAT. § 705.20(1)(c), a nonprobate transfer applies to any property owned by the decedent prior to death which is "the subject of the instrument" and which "passes to a person whom the decedent designates . . . in the instrument." The instrument here, the Annuity, contains such a provision. It states that "if two annuitants are named and the First Annuitant dies while the Co-Annuitant is living, the Co-Annuitant will become the Owner." Ronald designated Dianne as a co-annuitant with a right to ownership upon his death. Consistent with § 705.20(1)(c), the Annuity's language calls for transfer of ownership upon Ronald's death to Dianne and therefore avoids any contrary testamentary designation.

¶ 20. We pause to observe that WIS. STAT. § 705.20(1) does specifically mention a "marital property agreement" and would apparently lend support to the Jung children's claim. In Ronald and Dianne's case, however, their marital agreement does not purport to transfer property upon the death of the other. Rather, the agreement seeks to classify their property and, in Ronald's case, works in conjunction with his will which he executed on the same day as the agreement. Ronald's will is what calls for the conveyance of his

individual property to the Jung children as beneficiaries of the remainder of his estate. The will therefore provides the means by which the Jung children seek the proceeds of the Annuity. However, conveyance of the Annuity through Ronald's will is precisely what a § 705.20(1) nonprobate transfer seeks to avoid. Section 705.20(1) precludes the transfer of property according to a testamentary arrangement where a contractual agreement provides otherwise.

¶ 21. WISCONSIN STAT. § 705.20(1) is identical to the language presented by § 101 of the Uniform Nonprobate Transfers on Death Act of the Uniform Laws Annotated (U.L.A.). The U.L.A. comments following § 101 describe the purpose and scope of the above provision:

> This section is a revised version of former Section 6–201 of the original Uniform Probate Code, which authorized a variety of contractual arrangements that had sometimes been treated as testamentary in prior law. For example, most courts treated as testamentary a provision in a promissory note that if the payee died before making payment, the note should be paid to another named person; or a provision in a land contract that if the seller died before completing payment, the balance should be canceled and the property should belong to the vendee. These provisions often occurred in family arrangements. The result of holding such provisions testamentary was usually to invalidate them because not executed in accordance with the statute of wills. On the other hand, the same courts for years upheld beneficiary designations in life insurance contracts. The drafters of the original Uniform Probate Code declared in the Comment that they were unable to identify policy reasons for continuing to treat these varied

865

arrangements as testamentary. The drafters said that the benign experience with such familiar will substitutes as the revocable inter vivos trust, the multiple-party bank account, and United States government bonds payable on death to named beneficiaries all demonstrated that the evils envisioned if the statute of wills were not rigidly enforced simply do not materialize. The Comment also observed that because these provisions often are part of a business transaction and are evidenced by a writing, the danger of fraud is largely eliminated.

Because the modes of transfer authorized by an instrument under this section are declared to be nontestamentary, the instrument does not have to be executed in compliance with the formalities for wills; nor does the instrument have to be probated, nor does the personal representative have any power or duty with respect to the assets.

The sole purpose of this section is to prevent the transfers authorized here from being treated as testamentary.

UNIF. NONPROBATE TRANSFERS ON DEATH ACT § 101 cmt., 8B U.L.A. 200 (1993).

¶ 22. In short, these comments explain how certain contractual arrangements have been treated as testamentary regardless of contractual language addressing the transfer of rights and ownership upon the death of the contract creditor. The purpose of UNIF. NONPROBATE TRANSFERS ON DEATH ACT § 101 is to take such contractual arrangements out of the realm of probate and to permit the terms of the contract to be upheld. We believe the same holds true in this case.

¶ 23. Although disputes between annuity contracts and marital property agreements are uncommon, our reliance on the language in WIS. STAT. § 705.20 is not unprecedented. In *Orr v. Peterson*, 34

Cal. Rptr. 2d 449, 457 (Cal. Ct. App. 1994), the California Court of Appeals addressed a similar dispute arising from the death of an annuity holder. In that case, the decedent was survived by his wife Loretta and by a child from a previous marriage. The decedent's will made no bequest to Loretta and instead bequeathed all of his property (his personal effects and the "residue" of his estate) to his child and her family. *See id.* at 452. The will did not mention two annuity contracts which the decedent and Loretta had purchased. The contracts themselves identified the decedent as "annuitant" and "owner" and Loretta as "joint owner." The contracts also stated, "If there is more than one owner, at the death of the first owner payment will be made to the surviving owner. If the deceased owner's spouse is the surviving owner, then the surviving spouse will become the owner." *Id.* at 454. The court concluded that this language was sufficient to establish a nonprobate transfer of funds to the decedent's spouse.

¶ 24. In reaching its conclusion, the *Orr* court relied upon a statute identical to WIS. STAT. § 705.20 and to UNIF. NONPROBATE TRANSFERS ON DEATH ACT § 101. CALIFORNIA PROB. CODE § 5000(a) (West 2000) recognizes the validity of nonprobate transfers upon death provided "in an insurance policy, contract of employment, bond, mortgage . . . or other written instrument of a similar nature." The court found this section applicable to "written provisions" that direct that "money or other benefits due to, controlled by, or owned by a decedent before death shall be paid after the decedent's death to a person whom the decedent designates" in the written instrument. CAL. PROB. CODE § 5000(b)(1); *cf.* § 705.20(1)(a). The ·court concluded that the annuity contracts at issue "fit the broad

description" of § 5000 and that the written instructions for payment to the surviving owner upon the death of the other owner or spouse should be given effect. *See Orr*, 34 Cal. Rptr. 2d at 457. This holding is consistent with our decision.

¶ 25.   In addition to its reliance on the nonprobate transfer statute, the *Orr* court reviewed a statute pertaining to joint accounts with the right of survivorship.[6] The statute, CAL. PROB. CODE § 5302(a) (West 2000), provides that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent." The court found that an annuity fit the definition of a joint account under CAL. PROB. CODE § 5122(a) (West 2000) because an annuity, like an account, involves a "deposit of funds between a depositor and a financial institution." *Id.* The court also found the issuer of the annuity, Metropolitan Life Insurance Co., to be a "financial institution" because, while not a "bank, savings and loan or credit union," it was a "like organization" since it held the deposit in substantially the same manner and for the same purpose as funds deposited in traditional banking institutions. *See* CAL. PROB. CODE § 40 (West 2000); *Orr*, 34 Cal. Rptr. 2d at 456. Thus, pursuant to § 5302(a), the annuities in *Orr* belonged to the surviving account holder upon the annuitant's death, and not to the annuitant's estate.

---

[6] The court in *Orr v. Peterson*, 34 Cal. Rptr. 2d 449, 457 (Cal. Ct. App. 1994), also considered a third statutory provision involving nonprobate transfers of community property. Wisconsin has no statutory equivalent to this section and thus it will not be discussed.

¶ 26. California's law on joint accounts has a parallel in Wisconsin. WISCONSIN STAT. § 705.04(1) provides that joint account funds belong to the surviving party unless there is clear and convincing evidence of a different intention "at the time the account is created." WISCONSIN STAT. § 705.01(1) also similarly defines "account" and "financial institution" as California has.[7] In addition, Wisconsin and California law shadows the U.L.A.'s language on the rights of survivors under joint accounts. See UNIF. MULTIPLE-PERSON ACCOUNTS ACT §§ 12, 1, 8B U.L.A. 178, 169–70 (1993).

¶ 27. In this case, while the Annuity is not referred to as an account within the terms of the contract, we nonetheless find compelling the analysis proffered in *Orr*. An annuity, like a traditional bank account, is opened by depositing funds into a financial organization. Like a savings bank account and a certificate of deposit, an annuity can earn interest which is payable to the owner. A savings account or certificate of deposit is an investment tool analogous to an annuity. Here, although the issuer of the Annuity, Prudential Insurance Co., may not be a traditional bank or savings institution, it provides a similar function. Additionally, like a joint bank account, the Annuity contains a clause

---

[7] WISCONSIN STAT. § 705.01(3) contains slightly different language than CAL. PROB. CODE § 40 (West 2000). Wisconsin defines "financial institution" as "any organization authorized to do business under state or federal laws relating to financial institutions, including, without limitation, banks and trust companies, savings banks, building and loan associations, savings and loan associations and credit unions." Section 705.01(3). CALIFORNIA PROB. CODE § 40 regards a "financial institution" as "a state or national bank, state or federal savings and loan association or credit union, or like organization."

giving the co-annuitant the right of survivorship upon the annuitant's death.

¶ 28. WISCONSIN STAT. § 705.04(1) is applicable here. The Annuity constitutes a "joint account" because the sums of money in the Annuity transferred ownership to Dianne upon Ronald's death. It is clear that no other intention was evidenced at the time the Annuity was created. *See id.* While the Jung children would argue that the marital agreement and will express a different intent, as a joint account such later intentions do not enter the equation. *See id.* Therefore, we conclude that as a joint account, the Annuity circumvents the conflicting language presented by the marital agreement and the will.

¶ 29. Aside from the terms of the marital agreement, the Jung children seek refuge in the policy argument that the "efficiency" of marital property agreements is threatened if they are not strictly followed. They contend that if the trial court's decision stands, a marital agreement that classifies property as one spouse's individual property and requires the other spouse to relinquish that property would have virtually no effect.

¶ 30. We agree that in some cases a marital agreement must yield to the terms of a previously agreed-upon contractual arrangement. As we have determined, under WIS. STAT. § 705.20, a contractual arrangement that creates a nonprobate transfer of property will defeat a marital agreement that does not make such a transfer. Under WIS. STAT. § 705.04(1), a joint account with the right of survivorship will defeat a marital agreement that seeks to transfer funds otherwise. We acknowledge that this result places the onus

on married couples to be knowledgeable of the terms of contractual arrangements which are included within their marital agreements. This result, however, does not strike us as particularly troubling because it will encourage married couples to become more aware of the terms of their prior contractual arrangements and to express more clearly their intentions in planning their estate.

¶ 31. In this case, if Ronald had desired ownership of the Annuity to pass to his children and not to Dianne, he could have authorized such a change by removing Dianne as a co-annuitant. As the Annuity provides, "If a First Annuitant and a Co-Annuitant are named, we will remove one from the contract upon: (1) receipt of your written request to remove that annuitant . . . ." We are not convinced that the purposes of the marital property agreement are subverted by upholding the terms of the Annuity.

*By the Court.*—Order affirmed.