Agnes E. MACIOLEK, and Agnes E. Maciolek, Trustee Under the Gerald B. Maciolek and Agnes E. Maciolek Revocable Trust Dated January 21, 1997, Plaintiffs-Respondents-Petitioners,

v.

CITY OF MILWAUKEE EMPLOYES' RETIREMENT SYSTEM ANNUITY AND PENSION BOARD, Defendant-Appellant.

Supreme Court

*No. 2004AP1254. Oral argument December 2, 2005. —Decided January 31, 2006.*

2006 WI 10

(Also reported in 709 N.W.2d 360.)

For the plaintiffs-respondents-petitioners there were briefs by *James J. Winiarski* and *James Winiarski Law Office,* Milwaukee, and oral argument by *James J. Winiarski.*

For the defendant-appellant there was a brief by *Kathy L. Nusslock, Daniel J. Borowski,* and *Davis & Kuelthau, s.c.,* Milwaukee, and oral argument by *Kathy L. Nusslock.*

¶ 1. N. PATRICK CROOKS, J. Agnes E. Maciolek (Maciolek) appeals a decision of the court of appeals,[1] reversing the Milwaukee County Circuit Court grant of summary judgment in her favor. The issue before this court is whether the City of Milwaukee Employees' Retirement System Annuity and Pension Board (MERS) can require Maciolek to follow the procedures outlined in Wis. Stat. § 867.046(1m) (2003–04)[2] before MERS is required to make payment on an asset due to her.[3]

---

[1] *Maciolek v. Milwaukee Employes' Retire. Sys. Annuity,* 2005 WI App 74, 280 Wis. 2d 585, 695 N.W.2d 875.

[2] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[3] As the court of appeals noted, although Wis. Stat. § 766.58 has been amended since the Macioleks executed their marital property agreement, Maciolek does not argue that this court consider the 1997 version of the statute. Therefore, like the court of appeals, we will consider only the current version of the statute. *See Maciolek,* 280 Wis. 2d 585, ¶ 3 n.2.

65

¶ 2. We affirm the decision of the court of appeals. We conclude that, in the absence of an agreement between a holder of the property, such as MERS, and the person seeking its transfer, such as Maciolek, a holder may require compliance with the statutory provisions outlined in Wis. Stat. § 867.046(1m) to effect a transfer of this type of property, despite a "Washington Will" provision in a marital property agreement. On the issue of whether or not any of these Global Pension Settlement (GPS) benefits were marital property, since it was not argued before, nor reached by, either the circuit court or the court of appeals, we decline to address the issue here.

I

¶ 3. The pertinent facts are not in dispute. In January 1997, Maciolek and her husband, Gerald Maciolek (Gerald) executed a marital property agreement, pursuant to Wis. Stat. § 766.58 (1997–98), and created a revocable trust. The marital property agreement contained a "Washington Will" provision.[4] The provision was intended to provide for the direct transfer of property that would otherwise require probate, to the transferee, without any probate proceeding. It stated, in relevant part:

> 1. Upon the death of either of the parties hereto, all of the decedent's ownership interests in any and all property which would otherwise be subject to probate

---

[4] Wisconsin Stat. § 766.58(3)(f) is commonly referred to as the "Washington Will" statute. It provides that, pursuant to a marital property agreement, spouses may agree to "[p]rovid[e] that upon the death of either spouse any of either or both spouses' property, including after-acquired property, passes without probate to a designated person, trust or other entity by nontestamentary disposition." Wis. Stat. § 766.58(3)(f).

administration, shall immediately pass to and vest in the Trustee of the "GERALD B. MACIOLEK AND AGNES E. MACIOLEK REVOCABLE TRUST DATED JANUARY 21, 1997" without probate and by nontestamentary disposition. UPON DEMAND AND UPON RECEIPT OF A COPY OF THIS AGREEMENT, ANYONE HAVING POSSESSION OF SUCH PROPERTY SHALL IMMEDIATELY TRANSFER SAID PROPERTY TO THE SAID TRUSTEE. THE TRANSFER SHALL OCCUR WITHOUT FURTHER PROOF OF AUTHORITY OR OWNERSHIP OF SAID PROPERTY, AND WITHOUT ANY KIND OF COURT PROCEEDING OR COURT ORDER.

. . . .

21. *DIRECTIONS TO ANYONE HOLDING PROPERTY UPON OUR RESPECTIVE DEATHS.* UPON THE FIRST SPOUSE'S DEATH, PLEASE IMMEDIATELY PAY OR RE-TITLE ALL ASSETS IN MY NAME, AND WHICH WOULD OTHERWISE BE SUBJECT TO PROBATE, TO THE TRUSTEE OF THE "GERALD B. MACIOLEK AND AGNES E. MACIOLEK REVOCABLE TRUST DATED JANUARY 21, 1997." FOLLOW HIS OR HER INSTRUCTIONS. PLEASE DO NOT REQUIRE ANY KIND OF COURT APPROVAL OR DOMICILIARY LETTERS.

¶ 4. Gerald was employed by the City of Milwaukee until his retirement on June 1, 1981. As a retired employee, Gerald was a beneficiary of certain funds under GPS, managed by MERS. The GPS constituted the settlement of various lawsuits relating, in part, to pension benefits payable by MERS to City of Milwaukee employees. Under the terms of the settlement agreement, Gerald was entitled to $27,422.24 in benefits. The GPS benefits were titled exclusively in Gerald's name, and the consent to the GPS settlement did not provide for the designation of a beneficiary.

¶ 5. Gerald died on May 28, 2001, before his GPS benefits could be distributed. Following his death, MERS notified Maciolek that it held benefits in Gerald's name and requested the identification of the person legally entitled to receive the funds. Maciolek sent MERS a "Claim and Proof of Death" claiming she was legally entitled to receive the benefits. On January 21, 2002, Maciolek notified MERS she was the representative for Gerald's estate.

¶ 6. On April 12, 2002, MERS wrote Maciolek advising her of the procedures she could use to facilitate payment of Gerald's GPS benefits. On April 24, 2002, Maciolek responded advising MERS that she would not be opening an estate and that she intended to rely on the "Washington Will" provision in the marital property agreement. Pursuant to the procedures outlined in Wis. Stat. § 867.046(2), she subsequently submitted a Form HT-110 and a certified copy of the marital property agreement.

¶ 7. On July 21, 2002, MERS advised Maciolek that it could not accept the Form HT-110 as evidence of her ownership of the GPS benefit because the GPS benefits did not qualify for transfer under Form HT-110 pursuant to Wis. Stat. § 867.046(2). MERS then presented two statutory options to transfer ownership of the GPS benefits based upon Maciolek's reliance on the "Washington Will" provision. She could either provide a certificate of summary confirmation of interest in property pursuant to § 867.046(1m), or provide a verified statement from the personal representative of Gerald's estate filed with the probate court under Wis. Stat. § 865.201.

¶ 8. Maciolek responded, on July 7, 2003, by filing suit against MERS for payment of Gerald's GPS benefits. MERS moved for summary judgment requesting

68

dismissal of the suit on the grounds that Maciolek was required to obtain a certificate issued under Wis. Stat. § 867.046(1m), in order for MERS to legally transfer the GPS benefits to the trust under the "Washington Will" provision. The Milwaukee County Circuit Court, Judge Michael D. Guolee, denied the summary judgment motion of MERS, and instead granted summary judgment to Maciolek. The court indicated that the nonprobate transfer agreement in the Macioleks' marital property agreement complied with the law, and that use of Form HT-110 was the proper procedure to use to transfer this asset. MERS appealed.

¶ 9. The court of appeals reversed the decision of the circuit court. The court of appeals held that MERS could require Maciolek to comply with the confirmation procedures in § 867.046(1m). Maciolek petitioned this court for review.

## II

¶ 10. Statutory interpretation presents an issue of law which we review de novo. While the review is de novo, this court benefits from the analyses of the circuit court and the court of appeals. *State v. Anderson,* 2005 WI 54, ¶ 23, 280 Wis. 2d 104, 695 N.W.2d 731 (citing *State v. Waushara County Bd. of Adjustment,* 2004 WI 56, ¶ 14, 271 Wis. 2d 547, 679 N.W.2d 514).

## III

¶ 11. Before we begin our analysis of whether MERS had the right to insist upon compliance with Wis. Stat. § 867.046(1m), it is helpful to outline the statutory scheme. Wisconsin Stat. ch. 766 governs marital prop-

erty agreements. Wisconsin Stat. § 766.58(3)(f) authorizes "Washington Will" provisions in such agreements. As noted previously, the statute provides, in relevant part, that in a marital property agreement spouses may "[p]rovid[e] that upon the death of either spouse any of either or both spouses' property, including after-acquired property, passes without probate to a designated person, trust or other entity by nontestamentary disposition." Wis. Stat. § 766.58(3)(f). Such a provision allows married couples to specify the nontestamentary disbursement of property without probate. *Id.* In addition, Chapter 766 expressly provides that "Chapter 854 applies to transfers at death under a marital property agreement." Wis. Stat. § 766.58(3m).

¶ 12. Wisconsin Stat. § 705.20 governs nonprobate transfers at death in regard to, among other things, a marital property agreement.[5] It provides that

---

[5] Wisconsin Stat. § 705.20 *Nonprobate transfers at death* provides, in relevant part:

(1) *A provision for a nonprobate transfer on death in* an insurance policy, contract of employment, bond, mortgage, promissory note, certificated or uncertificated security, account agreement, custodial agreement, deposit agreement, compensation plan, pension plan, individual retirement plan, employee benefit plan, trust, conveyance, deed of gift, *marital property agreement, or other written instrument of a similar nature is nontestamentary.* This subsection governs a written provision that:

    (a) *Money or other benefits due, controlled by or owned by a decedent before death must be paid after the decedent's death to a person whom the decedent designates either in the instrument or in a separate writing,* including a will executed either before or at the same time as the instrument, or later;

. . . .

    (3) Chapter 854 applies to transfers at death under this section.

Wis. Stat. § 705.20 (emphasis added).

70

"[m]oney or other benefits due, controlled by or owned by a decedent before death must be paid after the decedent's death to a person whom the decedent designates either in the instrument or in a separate writing. . . ." Wis. Stat. § 705.20(1)(a). It also references the applicability of Chapter 854 to the statute. Wis. Stat. § 705.20(3).

¶ 13. Wisconsin Stat. ch. 854 establishes general rules for transfers at death. Included are governing rules for nontestamentary transfers resulting from provisions in various written instruments, including marital property agreements, when the transfer may impact a third party. Wis. Stat. § 854.23.[6] Section 854.23(2) provides protection for payers who make payments pursuant to marital property agreements, who do not have notice of a competing claim. This protection is dependent on the payer receiving a "governing instrument" defined in § 854.23(1) as including any one of three options. First, an individual appointed as personal representative in an informal administration

---

[6] Wisconsin Stat. § 854.23 *Protection of payers and other 3rd parties* provides, in relevant part:

(1)   Definition. In this section, *"governing instrument" includes* a filed verified statement under s. 865.201, *a certificate under s. 867.046 (1m) or* a recorded application under s. 867.046 (5).

(2)   Liability depends on notice. (a) *A payer or other 3rd party is not liable for having transferred property to a beneficiary designated in a governing instrument* who, under this chapter, is not entitled to the property, or for having taken any other action in good faith reliance on the beneficiary's apparent entitlement under the terms of the governing instrument, before the payer or other 3rd party received written notice of a claimed lack of entitlement under this chapter. However, a payer or other 3rd party is liable for a payment made or other action taken after the payer or other 3rd party received written notice of a claimed lack of entitlement under this chapter.

Wis. Stat. § 854.23 (emphasis added).

may execute a filed verified statement under Wis. Stat. § 865.201, confirming the transfer of interest in property pursuant to a marital property agreement. Wis. Stat. § 854.23(1). Second, a court may issue a certificate to an individual authorizing transfer of the property upon presentation of specific identified documents to the court, pursuant to Wis. Stat. § 867.046(1m). Third, a recorded application under § 867.046(5) allows any procedure in §§ 867.046(1m), (2) or (3).

¶ 14. Wisconsin Stat. § 867.046 outlines procedures for summary confirmation of an interest in property. The statute provides, in relevant part:

> (1m) Upon death; generally. *If a domiciliary of this state dies who immediately prior to death had an interest in property in this state, including an interest in survivorship marital property,* or if a person not domiciled in this state dies having an interest in property in this state, including an interest in survivorship marital property, *upon petition of the decedent's spouse or upon petition of a beneficiary of a marital property agreement to the court,* of the county of domicile of the decedent or, if the decedent was not domiciled in this state, of any county where the property is situated, *the court shall issue a certificate under the seal of the court. The certificate shall set forth the fact of the death of the decedent, the termination or transfer of the decedent's interest in the property, the interest of the petitioner in the property and any other facts essential to a determination of the rights of persons interested.* The certificate is prima facie evidence of the facts recited, and if the certificate relates to an interest in real property or to a debt secured by an interest in real property, the petitioner shall record a certified copy or duplicate original of the certificate in the office of the register of deeds in each county in this state in which the real property is located.

> (2) Upon death; interest in property. *As an alternative to sub. (1m), upon the death of any person having*

72

*an interest in any real property,* a vendor's interest in a *land contract,* an interest in a *savings or checking account,* an interest in a *security* or a mortgagee's interest in a *mortgage, including an interest in survivorship marital property, the decedent's spouse or a beneficiary of a marital property agreement may obtain evidence of the termination of that interest of the decedent and confirmation of the petitioner's interest in the property by providing to the register of deeds* of the county in which the property is located the certified death certificate for the decedent and, on applications supplied by the register of deeds for that purpose, *all of the following information:*

    (a)  The name, residence and post-office addresses of the decedent and the applicant.

    (b)  The date of decedent's death.

Wis. Stat. § 867.046 (emphasis added).

## IV

¶ 15.  With the statutory scheme in mind, we now turn to the question of whether MERS may require Maciolek to comply with the procedures detailed in Wis. Stat. § 867.046(1m) before MERS makes payment on an asset due to her. There are three parts to our discussion. First, whether Maciolek, through her marital property agreement, can eliminate the requirement of any court proceeding before assets due her are transferred? Second, what constitutes a "governing instrument" under Wis. Stat. § 854.23? Finally, if Maciolek is required to comply with procedures in Wis. Stat. § 867.046, may she use those outlined in subsection (2) rather than those in subsection (1m)? We will discuss each in turn.

¶ 16.  When examining a statute, "we have repeatedly held that statutory interpretation 'begins with the

language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). Since we determine that the meaning of the statutes at issue is plain, we need not resort to extrinsic sources to assist in our analysis.

¶ 17. Maciolek argues that Wis. Stat. § 705.20 expressly recognizes nonprobate transfers under a marital property agreement containing a "Washington Will" provision in accord with Wis. Stat. § 766.58(3)(f).[7] She further submits that § 705.20(1)(a) allows for provisions in written instruments, including marital property agreements, that require that money or other benefits due "*must be paid* after the decedent's death to a person whom the decedent designates either in the instrument or in a separate writing. . . ." Wis. Stat. § 705.20(1)(a) (emphasis added). It is Maciolek's position, therefore, that because her marital property agreement is consistent with Wis. Stat. § 766.58(3)(f), and because the agreement by its very terms specifically precludes the requirement of court confirmation, MERS cannot make her comply with the procedures outlined in Wis. Stat. § 867.046(1m).[8]

¶ 18. MERS's position is that Wis. Stat. § 867.046(1m) is the only means to effectuate a nonprobate transfer of pension benefits under a "Washington Will" provision. MERS argues that while the procedures

---

[7] In her brief to this court, Maciolek correctly notes that the court of appeals did not address the impact of Wis. Stat. § 705.20 on the requirements of Wis. Stat. § 854.23. While we agree with the court of appeals that § 705.20 has no effect on the issue at hand, we will discuss the parameters of the statute.

[8] Maciolek does not argue that Wis. Stat. § 867.046(1m) is inapplicable to this situation. Instead, she argues that § 867.046(1m) is not mandatory.

in § 867.046(1m) are not mandatory, per se, they are required for payers and other third parties to gain the protections afforded by Wis. Stat. § 854.23.

¶ 19. We agree with Maciolek that the Wisconsin Legislature intended Wis. Stat. § 705.20 to allow individuals to avoid probate, and that Wis. Stat. § 766.58 allows "Washington Will" provisions. *See Reichel v. Jung*, 2000 WI App 151, ¶¶ 21–22, 237 Wis. 2d 853, 616 N.W.2d 118. As the court of appeals noted in *Jung*, § 705.20(1) "is identical to the language presented by § 101 of the Uniform Nonprobate Transfers on Death Act of the Uniform Laws Annotated (U.L.A.)." *Id.*, ¶ 21. The comments of the U.L.A. discussing the scope and purpose of § 101 provide:

> This section is a revised version of former Section 6–201 of the original Uniform Probate Code, which authorized a variety of contractual arrangements that had sometimes been treated as testamentary in prior law. . . .
>
> Because the modes of transfer authorized by an instrument under this section are declared to be non-testamentary, the instrument does not have to be executed in compliance with the formalities for wills; nor does the instrument have to be probated, nor does the personal representative have any power or duty with respect to the assets.
>
> The sole purpose of this section is to prevent the transfers authorized here from being treated as testamentary.

*Id.* (citing *Unif. Nonprobate Transfers on Death Act* § 101 cmt., 8B U.L.A. 200 (1993)). The *Jung* court concluded:

> In short, these comments explain how certain contractual arrangements have been treated as testamen-

tary regardless of contractual language addressing the transfer of rights and ownership upon the death of the contract creditor. The purpose of the Unif. Nonprobate Transfers on Death Act § 101 is to take such contractual arrangements out of the realm of probate and to permit the terms of the contract to be upheld.

*Jung*, 237 Wis. 2d 853, ¶ 22.

¶ 20.   We cannot agree, however, with Maciolek's conclusion that her valid "Washington Will" provision should be effective to transfer the GPS funds without any sort of court action or proceeding, unless MERS agrees to such transfer. The decision in *Jung* does not mean that there should be no court involvement, ever, in regard to the transfer of nonprobate property. No provision of Wis. Stat. §§ 766.58(3) or 705.20 permits parties to ignore Chapter 854, or to agree to prohibit court involvement in implementing a marital property agreement.[9] As the court of appeals noted, the fact that "Washington Will" provisions "permit transfer of property without probate. . . . does not mean the legislature allowed parties to agree to no court involvement in implementing transfer of ownership and creating a reliable and public record of transfer." *Maciolek v. Milwaukee Employes' Retire. Sys. Annuity*, 2005 WI App 74, ¶ 19, 280 Wis. 2d 585, 695 N.W.2d 875.

¶ 21.   Furthermore, the confirmation procedure outlined in Wis. Stat. § 867.046(1m) is not probate. Probate is "[t]he judicial procedure by which a testa-

---

[9] It was suggested by counsel for Maciolek at oral argument that if the legislature wished to amend the statutes to reflect Maciolek's interpretation of the effect of Wis. Stat. §§ 705.20 and 766.58, it might add language to § 705.20 to the effect that no other summary procedures or probate procedures are mandatory to accomplish a nonprobate transfer.

mentary document is established to be a valid will. . . ."
*Black's Law Dictionary,* 1219 (7th ed. 1999). While
§ 867.046(1m) does require involvement by a circuit
court, and its confirmation procedure is sometimes
employed in the probating of an estate, the procedure
itself is not probate. The requirement of a confirmation
procedure in accordance with § 867.046(1m) is, there-
fore, not contrary to the legislative intent of allowing
individuals to avoid probate.[10]

¶ 22. We are further persuaded that Maciolek
cannot contract around the confirmation requirements
MERS may choose to require by the fact that MERS
was not a party to the contract between Maciolek and
Gerald. Wisconsin courts have long recognized that one
cannot enforce a contract against an entity that is not a
party to it. *See Abramowski v. Wm. Kilps Sons Realty,
Inc.,* 80 Wis. 2d 468, 472, 259 N.W.2d 306 (1977). We are
persuaded by MERS's argument that as a fiduciary of
the pension benefits of City of Milwaukee employees
and retirees, MERS has a duty to ensure that pension
benefits, including GPS benefits, are distributed to an
appropriate party or parties, in compliance with the
appropriate statutes. It is also significant that Maciolek
was not designated, and could not be designated, as the
beneficiary of Gerald's GPS funds, as the consent to the

---

[10] A full probate administration would have required that a
person petition for administration of an estate, establish that
the transferring document was executed consistent with the
formality of a will, request the court to appoint a personal
representative who would have control over the assets to be
transferred, inventory the assets, pay all creditors and taxes
due, distribute the remaining assets according to the governing
document and account to the court for each of these actions. *See*
Wis. Stat. ch. 856.

GPS settlement did not provide for the designation of a beneficiary. For these reason, MERS need not acquiesce to Maciolek's claim that her contract with Gerald supersedes any court proceeding that would prove her ownership of the pension benefits.

¶ 23. We next turn to the issue of what constitutes a "governing instrument" for purposes of Wis. Stat. § 854.23. We look at this issue in the context of a marital property agreement, since that is the instrument that is before us. Section 854.23(1) provides that a " 'governing instrument' *includes* a filed verified statement under s. 865.201, a certificate under s. 867.046 (1m) or a recorded application under s. 867.046 (5)." Wis. Stat. § 854.23(1) (emphasis added). Maciolek argues that the word "includes" is intended to convey an addition to, not a limitation of, the types of governing instruments already listed in the statute. In other words, Maciolek suggests that anything listed in Wis. Stat. § 854.01 as falling within the definition of a "governing instrument," including a marital property agreement, should also be considered a governing instrument under § 854.23.

¶ 24. We disagree with this analysis under the circumstances presented to us in this case. Wisconsin Stat. § 854.01 defines "governing instrument" in the chapter quite broadly.[11] The chapter, as a whole, clearly intends a marital property agreement be considered a "governing instrument." However, § 854.23, the section

_____

[11] Wisconsin Stat. § 854.01 states:

In this chapter, "governing instrument" means a will; a deed; a trust instrument; an insurance or annuity policy; a contract; a pension, profit-sharing, retirement or similar benefit plan; a marital property agreement under s. 766.58(3)(f); a beneficiary designation under s. 40.02(8)(a); an instrument under ch. 705; an

78

concerning protection of payers and other third-parties, defines "governing instrument" for purposes of that section, as one of three specific alternatives. Wis. Stat. § 867.046(1).

¶ 25.   Although our analysis is limited to the circumstances of a marital property agreement, we find it necessary to conclude that if "governing instrument" were intended to encompass the broader definition set out for the chapter generally, there would be no reason for the legislature to have enumerated the three alternatives it did in this section.

[7]

¶ 26.   We conclude that, under the circumstances presented in this case, the plain language of Wis. Stat. § 854.23 allows MERS to require Maciolek to provide to it a governing instrument as defined in that section. We note that MERS need not require compliance with that provision before it can legally transfer funds to a beneficiary. However, to be afforded the protections under § 854.23, compliance with the statutory requirements is mandatory.[12] Wis. Stat. § 854.23(2). MERS may, therefore, choose to mandate compliance.

¶ 27.   Maciolek next argues that even if Wis. Stat. § 867.046 applies to Gerald's GPS benefits, she should be allowed to use the procedures outlined in § 867.046(2) instead of (1m). We cannot support this conclusion. Section 867.046(1m) applies to transfers at

instrument that creates or exercises a power of appointment or any other dispositive, appointive or nominative instrument that transfers property at death.

Wis. Stat. § 854.01.

[12] While there is no claim that MERS has received or expects to receive notice that Maciolek is not entitled to the GPS benefits, the issue in this case is not notice, but rather the lack of a "governing instrument."

death, and specifically includes transfers of assets to the beneficiary of a "Washington Will" provision in a marital property agreement.[13] In contrast, § 867.046(2), which allows confirmation of the petitioner's interest in property by way of a Form HT-110, limits its applicability to five types of property: "an interest in any real property, a vendor's interest in a land contract, an interest in a savings or checking account, an interest in a security or mortgagee's interest in a mortgage, including an interest in survivorship marital property. . . ." Wis. Stat. § 867.046(2).

¶ 28.   Maciolek urges this court to read the provisions of Wis. Stat. § 867.046(2) as "upon the death of any person . . . the decedent's spouse or a beneficiary of a marital property agreement may obtain evidence of the termination of that interest of the decedent and confirmation of the petitioner's interest in the property by providing to the register of deeds . . ." a Form HT-110. In other words, Maciolek urges this court to completely ignore the language limiting the types of property to which this procedure may be applied. Such a reading is not only illogical, it would render the description of eligible property a surplusage. We reject this construction. *See Kelley Co. v. Marquardt,* 172 Wis. 2d 234, 250, 493 N.W.2d 68 (1992). Therefore, because the GPS pension benefits do not fall within the classes of property specified in subsection 2 that allow for this

---

[13] Wisconsin Stat. § 867.046(1)(a) defines "beneficiary of a marital property agreement" as a "designated person, trust or other entity having an interest in property passing by nontestamentary disposition under s. 766.58(3)(f)." Wis. Stat. § 867.046(1)(a).

alternate confirmation procedure, Maciolek may not substitute the procedures in § 867.046(2) for those of § 867.046(1m).

¶ 29. The GPS benefits do not come within "survivorship marital property," as they are titled solely in Gerald's name, and were not reclassified as "survivorship marital property" in their marital property agreement.[14] As noted earlier, it is also significant that Maciolek was not designated, and could not be designated, as the beneficiary of Gerald's interest in the GPS settlement funds. Since the GPS benefits are neither survivorship marital property, nor any of the other types of property enumerated in Wis. Stat. § 867.046(2), Maciolek may not utilize the procedures in § 867.046(2) in place of those outlined in (1m).

---

[14] Wisconsin Stat. § 766.60 provides, in relevant part:

*Optional forms of holding property; survivorship ownership.* (1) Spouses may hold marital property in a form that designates the holders of it by the words "(name of one spouse) or (name of other spouse) as marital property".

(2) Spouses may hold marital property in a form that designates the holder of it by the words "(name of one spouse) and (name of other spouse) as marital property".

. . . .

(5)(a) If the words "survivorship marital property" are used instead of the words "marital property" in the form described in sub. (1) or (2), the marital property so held is survivorship marital property. On the death of a spouse, the ownership rights of that spouse in the property vest solely in the surviving spouse by *nontestamentary* disposition at death. The first deceased spouse may not dispose at death of any interest in survivorship marital property. Holding marital property in a form described in sub. (1) or (2) does not alone establish survivorship ownership between the spouses with respect to the property held.

Wis. Stat. § 766.60.

■
¶ 30. Although the issue was not previously briefed or argued, Maciolek maintains that she did preserve her claim that MERS ignored her marital property interest in the GPS benefits. "Whether [Maciolek] could have elected to receive half of the benefits, and the proof she would have been required to submit, were not issues submitted to the trial court . . ." and the court of appeals held that such issues were not properly before it, therefore, such matters are not properly before this court either. *Maciolek,* 280 Wis. 2d 585, ¶ 22. We decline to address them further here. *See Allen v. Allen,* 78 Wis. 2d 263, 270, 254 N.W.2d 244 (1977)(court will generally not consider issues raised for the first time on appeal).

V

■
¶ 31. We conclude that, in the absence of an agreement between a holder of the property, such as MERS, and the person seeking its transfer, such as Maciolek, a holder may require compliance with the statutory provisions outlined in Wis. Stat. § 867.046(1m) to effect a transfer of the type of property at issue here, despite a "Washington Will" provision in a marital property agreement. On the issue of whether or not any of these GPS benefits were marital property, since it was not argued before, nor reached by, either the circuit court or the court of appeals, we decline to address the issue here.

*By the Court.* The decision of the court of appeals is affirmed.